**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CARRIE HUGENDUBLER,** )<br>)<br>**Plaintiff,** )<br>) | **CIVIL ACTION** |
| v. ) | **NO. 06-CV-3004** |
| )<br>**STATE FARM INSURANCE CO.,** )<br>)<br>**Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                                                                       **July 12, 2007**

Plaintiff Carrie Hugendubler filed the instant action pursuant to the provisions of the Declaratory Judgment Act,[1] seeking a declaration that Defendant State Farm Insurance Co. must provide underinsured-motorist ("UIM") benefits to her for the injuries that she sustained in a September 10, 2001 automobile accident. Now before the Court are Plaintiff's Motion for Summary Judgment,[2] Defendant's Response with New Matter to Plaintiff's Motion,[3] and Defendant's unopposed Motion for Summary Judgment.[4] For the reasons that follow, the Court will deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and enter judgment against Plaintiff.

---

[1] 42 Pa. Cons. Stat. Ann. § 7531 (West 2007).

[2] Doc. No. 19. Pursuant to a May 17, 2007 teleconference between the parties, Plaintiff's counsel agreed that he would withdraw Plaintiff's Motion for Summary Judgment and that he would respond to Defendant's Motion for Summary Judgment upon its filing. Plaintiff's counsel has failed to comply with either of these agreements. The Court is troubled by counsel's noncompliance, but will nonetheless consider the merits of Plaintiff's Motion in adjudicating this matter.

[3] Doc. No. 26.

[4] Doc. No. 28.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff sustained injuries in a motor-vehicle accident with an underinsured motorist on September 10, 2001.[5] Because Plaintiff's injuries exceeded the policy limits of the underinsured motorist's liability coverage, Plaintiff filed an insurance claim with Defendant State Farm and sought benefits under both her and her resident relatives' automobile-insurance policies. It is Plaintiff's position that each of her mother, Sharon Ziegler, her brother, Shawn Hugendubler, and her sister-in-law, Michele Hugendubler, qualify as resident relatives under their respective State Farm policies, and that she is therefore entitled to a maximum of $100,000 for each vehicle insured under these policies.[6] Defendant, however, claims that a sign-down waiver was executed under Plaintiff's policy limiting UIM coverage to $15,000 per vehicle rather than $100,000 per vehicle.[7]

Plaintiff filed a declaratory-judgment action in the Montgomery County Court of Common Pleas, and Defendant removed the case to this Court on July 10, 2006.[8] Plaintiff seeks a declaratory judgment that the sign-down waiver is invalid, and that Plaintiff is entitled to a maximum of $500,000 in UIM coverage.[9] Defendant contends that the sign-down waiver is valid, and has

---

[5] Action for Declaratory J. [Doc. No. 1, Ex. A] ¶ 9.

[6] See id. ¶¶ 4-6, 12. Plaintiff claims entitlement to UIM benefits under three separate State Farm insurance policies. The first policy is number 387 9144-D23-38L, a two-vehicle policy renewed by Plaintiff and her mother, Sharon Ziegler, on April 23, 2001. The policy lists Plaintiff's and Ziegler's home address as 305 Northview Avenue, Telford, Pennsylvania 18969. The second policy is number 39 0640-B20-38, a one-vehicle policy issued to Plaintiff's brother, Shawn Hugendubler, on February 20, 2001. The third policy is number 816 0167-F23-38L, a two-vehicle policy issued to Shawn Hugendubler and his wife, Michele Hugendubler, on June 23, 2001. The second and third policies list the home address of Shawn and Michele Hugendubler as 305 Northview Avenue, Telford, Pennsylvania 18969.

[7] Id. ¶ 12.

[8] See Notice of Removal [Doc. No. 1].

[9] Action for Declaratory J. ¶ 17.

denied Plaintiff's UIM-coverage claim to the extent that it purports to obtain benefits under Shawn and Michele Hugendubler's policies.[10] It is Defendant's position that Shawn and Michele Hugendubler fail to qualify as resident relatives, and that Plaintiff is entitled to a maximum of only $30,000.[11]

## II. LEGAL STANDARD

There is no dispute that Pennsylvania law governs this case.[12] Under Pennsylvania law, a declaratory-judgment action is particularly appropriate for construing contracts of insurance, and the proper construction of an insurance policy is an issue which may be resolved as a matter of law at the summary-judgment stage.[13]

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party."[14] "Only disputes over facts

---

[10] Def.'s Mot. for Summ. J. [Doc. No. 28] ¶¶ 30, 33, 34.

[11] See id. Defendant concedes that Plaintiff is entitled to a total of $30,000 in UIM coverage under her own policy and her mother's policy—$15,000 under Plaintiff's UIM coverage, and $15,000 under Plaintiff's mother's UIM coverage because Plaintiff is a resident relative under her mother's policy. Accordingly, Defendant has already tendered two $15,000 checks to Plaintiff in settlement of Plaintiff's claim.

[12] As a federal court exercising diversity jurisdiction over this action, the Court applies the substantive law of the state in which it sits. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In light of this dictate, and since there is no dispute between the parties that the policy contracts in this case are governed by Pennsylvania law, the Court will apply Pennsylvania state law throughout this Memorandum Opinion.

[13] Pressley v. Travelers Prop. Cas. Corp., 817 A.2d 1131, 1138 (Pa. Super. Ct. 2003).

[14] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[15] All inferences must be drawn, and all doubts resolved, in favor of the nonmoving party.[16]

## III.   ANALYSIS

The Court will first review Defendant's contention that Shawn and Michele Hugendubler fail to qualify as Plaintiff's resident relatives. The Court will then address the validity of the UIM sign-down waiver.

### A.   Resident-Relative Status of Plaintiff's Mother, Brother, and Sister-in-Law

Plaintiff claims entitlement to resident-relative benefits under the respective insurance policies purchased by her mother, brother, and sister-in-law. While each of these policies is separate in its coverage of respective drivers and vehicles, the policies are consistent in their definition of the term "relative," which is defined as follows:

> **Relative** – as used in Sections I, III, IV and V means a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school.[17]

Resident-relative status is further qualified in the policies' outline of the priorities for payment of first-party benefits:

1. When more than one policy applies, the person who suffers bodily injury shall recover first party benefits against applicable insurance coverage in the following order of priority:

---

[15] Id.

[16] Id. at 255.

[17] Def.'s Mot. for Summ. J. [Doc. No. 28], Ex. E, at 4.

> a. The policy on which the person is a named insured.
>
> b. The policy providing coverage because the person is residing in the household of a named insured and is:
>
> > (1) a spouse or other relative of a named insured; or
> >
> > (2) a minor in the custody of either a named insured or a relative of a named insured. . . .[18]

Reading these policy limitations together, it is apparent that to qualify as a resident relative under State Farm's insurance policies, a relative must live in the same household as the named insured.

Pennsylvania courts have long distinguished persons residing in the same dwelling from persons residing in the same household. In <u>Hoff v. Hoff</u>,[19] the Superior Court of Pennsylvania found that it was possible for two separate households to share an ordinary single-family home, declaring that "household means a domestic establishment under a single head or management," not simply under a single roof.[20] The Superior Court further summarized this distinction in <u>Donegal Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.</u>:[21]

> "[O]ne who, though related and living in the same home, maintains a separate apartment therein and divides the expense of maintenance" is not a member of the same household as an insured who resides there. 6C Appleman, Insurance Law and Practice (Buckley ed.), § 4411. Similarly, a son and daughter-in-law who live in the parents' home but who have separate bedrooms and living rooms, who buy their own groceries and usually do not eat with the parents, as a matter of law, are not members of the parents' household. <u>Hoff v. Hoff</u>, 132 Pa. Super. 431, 1 A.2d 506 (1938). So also, a mother who resides in a building owned by her daughter, but who pays rent and utilities, has a separate entrance, has her own kitchen, and does her own cooking

---

[18] <u>Id.</u> at 15.

[19] 1 A.2d 506 (Pa. Super. Ct. 1938).

[20] <u>Id.</u> at 508.

[21] 546 A.2d 1212 (Pa. Super. Ct. 1988).

is not a member of the same household as her daughter. Drake v. Donegal Mut.[ ] Ins. Co., 422 F. Supp. 272 (W.D. Pa. 1976). And, a son and grandson are not members of the grandfather's household where they are living in the grandfather's home under a temporary arrangement, where the son has stored rather than sold his furniture, and where the two families to a large extent maintain their separate identities. Mission Ins. Co. v. Ward, 487 S.W.2d 449 (Mo. 1972).[22]

In the instant case, Plaintiff's living situation at the time of her 2001 accident was similar to those living situations already reviewed by the Pennsylvania courts. Plaintiff, her mother Sharon Ziegler, her brother Shawn Hugendubler, and her sister-in-law Michele Hugendubler all resided at 305 Northview Avenue, Telford, Pennsylvania 18969.[23] That residence, owned in its entirety by Sharon, was divided into three separate apartments.[24] The first floor comprised two separate apartments, one where Plaintiff and her mother Sharon lived ("Apartment #1"), and the other where Shawn and Michele lived ("Apartment #2").[25] At the time of the accident, a doorway existed between Apartments #1 and #2 that was used to cross between the two apartments.[26] Although Apartments #1 and #2 each had a bathroom, Plaintiff and her mother often used the bathroom in Apartment #2 because of a plumbing problem in Apartment #1.[27] Moreover, three separate mailboxes numbered 1, 2, and 3 existed on the property, each apartment had its own electricity meter, and each apartment had its own entrance.[28] Shawn and Michele paid their own

---

[22] Id. at 1216.

[23] Action for Declaratory J. [Doc. No. 1, Ex. A] ¶¶ 4-6, 12.

[24] Def.'s Mot. for Summ. J. [Doc. No. 28] ¶ 7.

[25] Id. ¶¶ 22, 24.

[26] Id. at Ex. B, Zeigler Dep. 16:5-10, Apr. 25, 2007.

[27] Id. at 48:4-10.

[28] Id. ¶¶ 9, 10, 13.

utility bills, had their own phone service, and maintained renters insurance in their name that listed their residence as Apartment #2.[29]

Upon review of these facts, the Court holds, as a matter of law, that Shawn and Michele Hugendubler are not members of the same household as Plaintiff and her mother Sharon. Although some common usage may have existed between Apartments #1 and #2, Shawn and Michele lived with a degree of independence that created a household separate and distinct from the household of Plaintiff and her mother. Accordingly, Shawn and Michele were not Plaintiff's resident relatives at the time of her 2001 accident, and she cannot benefit from their State Farm policies.

### B.   Validity of the Sign-Down Waivers

Although Plaintiff claims that the primary purpose of this declaratory-judgment action is for this Court to declare that Plaintiff's sign-down waiver of UIM coverage limiting recovery to $15,000 per vehicle is invalid,[30] Plaintiff has failed to provide any substantive argument on record to support her position. Plaintiff merely argues this position in her Scheduling Information Report, which was submitted to the Court in preparation for a pretrial scheduling conference. The Scheduling Information Report, without citation, conclusively states that the sign-down waivers are invalid because (1) the waivers are not properly dated and do not properly list the amount of applicable coverage, thereby failing to comply with Sections 1731 and 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"); and (2) Plaintiff was not provided with new waivers to sign even after she had changed the tort election and coverage limits on her policy, in violation of Sections 1734 and 1791 of the MVFRL.

---

[29] Id. ¶¶ 25, 28.

[30] Pl.'s Mot. for Summ. J. [Doc. No. 19], Ex. B, Carrie Hugendubler Dep. 74:12-16, June 22, 2006.

At the summary judgment stage, the burden is upon the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts."[31] The nonmoving party cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim.[32] To the contrary, a mere scintilla of evidence in support of the nonmoving party's position will not suffice; there must be evidence on which a jury could reasonably find for the nonmovant.[33] Accordingly, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[34]

Here, Defendant's Motion for Summary Judgment contends that the sign-down waiver is valid, and Plaintiff's bare assertions set forth in her Scheduling Information Report are insufficient to contradict this contention. Plaintiff has provided no evidence on which a reasonable jury could find in her favor, and the Court will accordingly grant Defendant's Motion for Summary Judgment. Nonetheless, the Court finds that a discussion of the sign-down waiver's validity under Sections 1731, 1734, 1791, and 1791.1 of the MVFRL is appropriate.

      i.      Validity of the Sign-Down Waivers Under Sections 1731 and 1734

Section 1731 of the MVFRL prohibits the issuance of any motor vehicle liability insurance policy "unless uninsured motorist and underinsured motorist coverages are offered therein

---

[31] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

[32] Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

[33] Liberty Lobby, 477 U.S. at 252.

[34] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

or supplemental thereto in amounts as provided in Section 1734 (relating to request for lower limits of coverage)."[35] Section 1734 states that "[a] named insured may request in writing the issuance of coverage under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury."[36] The technical requirements of a Section 1731 waiver of UIM coverage do not apply to sign-down waivers under Section 1734.[37] A Section 1734 sign-down waiver requires only the signature of the insured and an express designation of the amount of UIM coverage requested.[38] The U.S. Court of Appeals for the Third Circuit, applying Pennsylvania law, has held that the requirements of Section 1734 are met where an insured merely initials a sign-down waiver and checks a box next to the desired coverage limits.[39]

Because the technical requirements of Section 1731 do not apply to the Section 1734 sign-down waiver at issue here, the Court must find only that the sign-down waiver is signed and that there is an express designation of the amount of UIM coverage requested. Upon review of the sign-down waiver,[40] the Court finds that the sign-down waiver is signed by Sharon Ziegler, and that there is an express designation of $15,000 per person and $30,000 per accident of UIM coverage. While a date does not appear next to Sharon Ziegler's signature, this alone is not sufficient to invalidate the waiver; all that is needed is the signature itself and the designation of coverage.

---

[35] 75 Pa. Cons. Stat. Ann. § 1731 (West 2006).

[36] Id. § 1734.

[37] Lewis v. Erie Ins. Exch., 793 A.2d 143, 155 (Pa. 2002).

[38] Id. at 153.

[39] Young v. State Farm Mut. Auto. Ins. Co., 54 Fed. Appx. 365, 368 (3d Cir. 2002) (not precedential).

[40] See Def.'s Mot. for Summ. J. [Doc. No. 13], Ex. B.

Moreover, it is clear throughout the policy that Plaintiff's mother executed the document on September 4, 1996. Accordingly, the sign-down waiver is valid and enforceable, and in conformance with Sections 1731 and 1734 of the MVFRL.

          ii.          <u>Validity of the Sign-Down Waivers Under Sections 1791 and 1791.1</u>

The notice provisions set forth in Sections 1791 and 1791.1 generally require that an insurance provider provide an insured with notice of the available benefits and limits under the MVFRL, as well as the minimum coverage levels mandated by the MVFRL.[41] Plaintiff's Scheduling Information Report suggests that when Plaintiff renewed her policy after executing the sign-down waivers and elected to modify the tort election and liability coverage limits, Defendant should have provided new waivers for Plaintiff to sign at the time that she renewed her policy. The failure to provide new sign-down waivers is apparently, in Plaintiff's view, a violation of the notice requirements of Section 1791 and/or Section 1791.1.

Plaintiff's argument is without merit on two grounds. First, it has been held that the subsequent purchase of higher liability policy coverage does not act to obviate a previous rejection of UIM coverage.[42] Second, and most importantly, courts have consistently held that there is no private remedy for an insurer's noncompliance with the notice requirements of Sections 1791 and 1791.1 when renewing a policy.[43] The Third Circuit Court of Appeals summarized the remedies available under Sections 1791 and 1791.1 as follows:

---

[41] <u>See</u> 75 Pa. Cons. Stat. Ann. §§ 1791, 1791.1 (West 2006).

[42] <u>Smith v. Hartford Ins. Co.</u>, 849 A.2d 277, 280 (Pa. Super. Ct. 2004).

[43] <u>Travelers Indem. Co. of Illinois v. DiBartolo</u>, 171 F.3d 168, 174 (3d Cir. 1999); <u>Foremost Ins. Co. v. Lynch</u>, 155 F. Supp. 2d 398, 401 (E.D. Pa. 2001); <u>Salazar v. Allstate Ins. Co.</u>, 702 A.2d 1038, 1044 (Pa. 1997); <u>Allstate Ins. Co. v. DeMichele</u>, 888 A.2d 834, 839-41 (Pa. Super. Ct. 2005); <u>Nationwide Mut. Ins. Co. v. Heintz</u>, 804 A.2d 1209, 1219 (Pa. Super. Ct. 2002).

> The Pennsylvania Supreme Court held that there was no private remedy for the insurer's admitted noncompliance with the renewal law. . . . The structure of the provisions is as follows: When someone applies for insurance, the insurer must provide certain information; failure to provide the information as required voids a waiver of [uninsured motorist] coverage; on renewal, information must also be provided. From that structure, the Pennsylvania court concluded that only initial noncompliance voids a section 1791.1 waiver, and that only the state administrative agency could enforce the renewal provisions. The District Court concluded that the same was true of section 1791, so DiBartolo could not benefit from an invalid renewal notice.[44]

Here, the Court has already concluded that the initial sign-down waiver is valid. Accordingly, Plaintiff has no private remedy for a claim based on Defendant's failure to provide the requisite notice upon Plaintiff's renewal of her policy, even where Plaintiff modified her tort and liability coverage.

## IV. CONCLUSION

The Court holds, as a matter of law, that the sign-down waiver executed under Plaintiff's State Farm insurance policy is valid and enforceable. The Court further holds, as a matter of law, that Plaintiff fails to qualify as a resident relative under Shawn and Michele Hugendubler's State Farm insurance policies. Accordingly, Plaintiff is entitled to $30,000 of UIM benefits under her policy—$15,000 of which is recoverable under Plaintiff's UIM coverage, and $15,000 of which is recoverable under Sharon Hugendubler's policy since Plaintiff qualifies as a resident relative under the policy.

An appropriate Order follows.

---

[44] DiBartolo, 171 F.3d at 174.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARRIE HUGENDUBLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | **NO. 06-CV-3004** |
| | ) | |
| **STATE FARM INSURANCE CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER

**AND NOW**, this 12th day of July 2007, upon consideration of Plaintiff's Motion for Summary Judgment [Document No. 19], Defendant's Response with New Matter to Plaintiff's Motion [Document No. 26], and Defendant's unopposed Motion for Summary Judgment [Document No. 28], it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment is **DENIED**; and

2. Defendant's Motion for Summary Judgment is **GRANTED** and judgment is **ENTERED** against Plaintiff in accordance with the attached Memorandum Opinion.

The Clerk of Court shall mark this case **CLOSED**.

It is so **ORDERED**.

                                                      **BY THE COURT:**

                                                      **/s/ Cynthia M. Rufe**
                                                      **CYNTHIA M. RUFE**, J.